# In the United States Court of Federal Claims

No. 11-152 T
(Filed: April 2, 2012 )
TO BE PUBLISHED

|  |  |  |
|---|---|---|
| ROBERT N. AND CYNTHIA CADRECHA, | ) ) ) ) ) ) ) ) ) ) ) ) | I.R.C. § 6511; I.R.C. § 6532; I.R.C. § 7422; tax refund claim; basis in stock received in demutualization of mutual insurance company; *Fisher v. United States*, 82 Fed. Cl. 780 (2008); notice of disallowance not withdrawn; statute of limitations on filing tax refund claim in Court of Federal Claims not tolled. |
| Plaintiffs, |  |  |
| v. |  |  |
| THE UNITED STATES, |  |  |
| Defendant. |  |  |

William Kalish, Frank J. Rief, III, Akerman Senterfitt LLP, Tampa, Fla., for plaintiffs.

Benjamin C. King, Jr., Attorney, G. Robson Stewart, Assistant Chief, David I. Pincus, Chief, Tax Division, Court of Federal Claims Section, John A. DiCicco, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

Plaintiffs, Robert N. and Cynthia Cadrecha, filed a complaint on March 9, 2011 claiming that they are owed a refund of $26,679 from the Internal Revenue Service ("IRS") and petitioning the Court to determine their tax liability. *See* Compl. (docket entry 1). On June 20, 2011, defendant, the United States, filed a motion to dismiss (docket entry 11) pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Defendant argues that plaintiffs' claim is untimely because they filed their complaint in the United States Court of Federal Claims after the running of the two-year statute of limitations set forth in I.R.C. § 6532(a)[1] and because they filed a refund claim with the IRS after the running of the statute of limitations set forth in I.R.C. § 6511(a).[2] Mot. to Dismiss 1.

---

[1] I.R.C. § 6532(a)(1) provides:

> No suit or proceeding under section 7422(a)[, which governs filing refund claims with the IRS,] for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within

**I.     Background**

In 2003, plaintiffs were fifty-percent shareholders in an S corporation[3] called Tampa Wholesale Furniture Company ("Tampa Wholesale"). Compl. ¶ 13. Tampa Wholesale owned a life insurance policy on Robert N. Cadrecha that was issued by Principal Mutual Holding Company ("Principal Mutual"). *Id.* Principal Mutual was a mutual insurance company that demutualized in 2003. *Id.* ¶ 14. When a mutual insurance company demutualizes, it converts from a company that is owned by its policyholders to a stock insurance company owned by its shareholders. *See Fisher v. United States*, 82 Fed. Cl. 780, 781–82 (2008) (discussing mutual insurance companies and the demutualization process), *aff'd*, 333 F. App'x 572 (Fed. Cir. 2009); *see also* Stephen J. Olsen, Chuck vs. Goliath: Basis of Stock Received in Demutualization of Mutual Insurance Companies, 9 Hous. Bus. & Tax L.J. 360 (2009). After the demutualization, Tampa Wholesale obtained stock in Principal Financial Group in exchange for its interest in Principal Mutual. Compl. ¶ 14. Tampa Wholesale then sold the newly acquired stock. *Id.* ¶ 15.

On April 15, 2004, plaintiffs filed their 2003 tax return on Form 1040. Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss 2 ("Pls.' Resp.") (docket entry 14, Aug. 19, 2011). On their tax return, plaintiffs reported a gain from the sale of Principal Financial Group stock that did not account for any basis[4] plaintiffs or Tampa Wholesale had in the stock. Compl. ¶ 15; *see also* Compl. Ex. A at 5.

---

that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

[2] In relevant part, I.R.C. § 6511(a) provides:

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

[3] An S corporation is a "small business corporation" that can have no more than one hundred shareholders, must have only one class of stock, and cannot have as a shareholder "a person . . . who is not an individual." I.R.C. § 1361(a)–(b). A corporation must formally elect to become an S corporation pursuant to I.R.C. § 1362. Once the election has been made, the income of the corporation is taxed through its shareholders, not through the corporation itself. *See* I.R.C. § 1363; 33A Am. Jur. 2d Federal Taxation ¶ 4621 (2012).

[4] According to the Internal Revenue Code, "[t]he gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain." I.R.C. § 1001(a). In general, the adjusted basis of property is its cost, I.R.C. § 1012(a), adjusted according to I.R.C. § 1016.

After timely filing their tax return, plaintiffs learned of *Fisher v. United States*, a case then pending before the Court of Federal Claims that presented issues that could affect plaintiffs' 2003 tax return. Compl. ¶¶ 16–18; Pls.' Resp. 2. In that factually analogous case, which was filed on December 1, 2004, the plaintiff trust sought a refund of taxes paid on gains reported as a result of the sale of stock received when the mutual insurance company with which the plaintiff had a policy demutualized. *See Fisher*, 82 Fed. Cl. at 781–83. The plaintiff sought a refund based on the theory that it realized no capital gain on the sale of its stock "because the proceeds were offset by the plaintiff's basis in the stock." *Id.* at 783. The issue was whether the plaintiff had a basis in the stock it obtained as a result of the insurance company's demutualization and, if so, how to calculate the amount of that basis. *See id.*

Because *Fisher* presented issues analogous to plaintiffs' situation, plaintiffs understood that, if the *Fisher* court determined that gain realized from selling stock obtained through demutualization could be offset by the basis in that stock, plaintiffs might be able to recover the taxes they paid on the gain they reported from the sale of stock attendant to Principal Mutual's demutualization. Because of the potential effect *Fisher* could have on plaintiffs' 2003 tax return, plaintiffs filed an amended income tax return on Form 1040X on March 20, 2007, which the IRS received on March 22, 2007. Compl. ¶ 16; Pls.' Resp. 2. Plaintiffs styled their amended return as a protective claim for refund pending the outcome of *Fisher*. Pls.' Resp. 2, Ex. B. This protective claim for refund was filed within three years from the date plaintiffs' tax return was filed in accordance with the statute of limitations set forth in I.R.C. § 6511(a).[5]

On May 10, 2007, after the statute of limitations to file an amended return had expired, *see supra* note 5, the IRS sent plaintiffs letter 916C regarding their March 22, 2007 filing. *See* Pls.' Resp. Ex. D. The letter explained that the IRS was unable to process plaintiffs' claim because the "supporting information was not complete." *Id.* The letter then invited plaintiffs to file "another claim" that included the name of the court case supporting plaintiffs' claim for a refund and any additional information relevant to plaintiffs' claim. *Id.* The IRS allowed plaintiffs thirty days from the date of the letter to submit the information it requested. *Id.* On May 17, 2007, plaintiffs replied to the IRS's letter, indicating that *Fisher* was the case to which their protective claim for refund referred. *Id.*

After plaintiffs submitted their May 17 letter, which the IRS received on May 23, 2007, *see id.* Ex. E, the IRS sent plaintiffs two letters. The first, dated June 26, 2007, explained that the IRS had not been able to resolve plaintiffs' claim because the necessary research had not been completed. *Id.* The letter advised plaintiffs that the IRS would contact them within forty-five days. *Id.* The second letter, dated August 13, 2007, advised plaintiffs that the IRS still had not resolved plaintiffs' claim because of the IRS's heavy workload and its inability to complete the applicable research. *Id.* Ex. F. The IRS's letter informed plaintiffs that an additional forty-five days was required. *Id.*

---

[5] The statute of limitations for plaintiffs to file an amended return as set forth in I.R.C. § 6511(a) expired on April 15, 2007, three years after plaintiffs filed their 2003 tax return. This is the later of the two limitation periods contained in the statute, the other being April 15, 2006, two years after plaintiffs paid the relevant tax. *See* Stipulation of Facts 1 (docket entry 23, Jan. 12, 2012).

3

Eighteen days later, on August 31, 2007, the IRS mailed plaintiffs letter 105C disallowing their claim. *Id.*; *see* Pls.' Notice to Supplement Attach. (docket entry 22-1, Dec. 1, 2011).[6] The letter referred to plaintiffs' May 23, 2007 submission, which plaintiffs filed in response to the IRS's request for additional information. Pls.' Notice to Supplement Attach. at 1. The letter stated: "You filed your claim for credit or refund more than 3 years after the tax return due date. A claim must be filed within 3 years from the time the return was filed." *Id.* It then notified plaintiffs that they filed their claim "more than 3 years after [they] filed [their] tax return" and "more than 2 years after [they] paid the tax." *Id.*; *see* I.R.C. § 6511(a).

Letter 105C went on to explain that plaintiffs could appeal the IRS's decision to disallow their claim to the Appeals Office. Pls.' Notice to Supplement Attach. at 1–3. The letter provided instructions on how to file such an appeal. *Id.* Finally, the letter informed plaintiffs that, if they did not agree with the decision, they could "file suit to recover tax, penalties, or other amounts, with the United States District Court having jurisdiction or with the United States Claims Court." *Id.* at 4. It then explained: "The law permits you to do this within 2 years from the date of this letter. If you decide to appeal our decision first, the 2-year period still begins from the date of this letter." *Id.*

In a letter dated August 30, 2007, plaintiffs responded to the IRS and "respectfully disagree[d]" with the IRS's disallowance of plaintiffs' claim.[7] Pls.' Resp. Ex. H. Plaintiffs argued that they filed their claim for refund in March 2007, which was within three years after their 2003 return was filed on April 15, 2004. *Id.* The IRS responded on November 9, 2007 indicating that it would send plaintiffs' letter to the Appeals Office and that plaintiffs would be contacted within forty-five days. *Id.* Ex. I.

A further exchange of letters followed. On October 1, 2008, plaintiffs sent a letter to the IRS stating that they had not yet received a response to their August 2007 appeal. *Id.* Ex. J. On October 20, 2008, the IRS responded that it had not "completed all the research necessary for a complete response." *Id.* Ex. K. Then, on November 3, 2008, plaintiffs wrote the IRS informing it that plaintiffs filed Form 843 ("Claim for Refund and Request for Abatement") in order to perfect the protective claim that they filed in March 2007. *Id.* Ex. L.

Plaintiffs' November 3, 2008 letter was sent after the trial court decision in *Fisher* was filed on August 6, 2008. *Fisher*, 82 Fed. Cl. 780. The *Fisher* court held that the plaintiff was entitled to a refund because the plaintiff was entitled to subtract its cost basis in the insurance policy from the gain realized on the sale of the stock it received as a result of the insurance company's demutualization. *Id.* at 799. The plaintiff did not owe any tax on the sale because the gain the plaintiff reported was less than the plaintiff's cost basis in the insurance policy. *Id.* Because the *Fisher* court held for the plaintiff, plaintiffs in this case attempted to perfect their

---

[6] The letter originally filed as Exhibit G to plaintiffs' response to defendant's motion to dismiss was incomplete. Therefore, the Court requested that plaintiffs file the complete letter. Plaintiffs filed the letter as an attachment to a Notice to Supplement on December 1, 2011.

[7] It is unclear why plaintiffs' letter in response to the IRS's notice of disallowance is dated one day before the notice. Plaintiffs also recognize this discrepancy. *See* Pls.' Resp. 2 n.1.

March 2007 protective claim to obtain a refund of the taxes they paid on the gain they reported from the sale of the stock in Principal Financial Group received as a result of Principal Mutual's demutualization. Plaintiffs did not subtract any cost basis from their gain on the sale of Principal Financial Group stock when they filed their 2003 tax return.

On November 5, 2008, two days after plaintiffs filed the November 3, 2008 perfecting document, the IRS again responded to plaintiffs' October 2008 letter stating that it was forwarding the letter to a different IRS office that would contact plaintiffs within forty-five days. Pls.' Resp. Ex. M. On December 3, 2008, the IRS replied to plaintiffs' November 3, 2008 letter, which it received on November 7, 2008, explaining that the requisite research had not yet been conducted and that plaintiffs would be contacted within forty-five days. *Id.* Ex. N. On January 15, 2009, the IRS again responded to plaintiffs' November 2008 letter, informing plaintiffs that their claim had been forwarded to the IRS's Examination Department in Austin, Texas, and that the Examination Department would contact plaintiffs within forty-five days. *Id.* Ex. O. Plaintiffs wrote a letter to the IRS dated May 13, 2009 inquiring as to the status of their claim. *Id.* Ex. P.

The next month, on June 25, 2009, plaintiffs, through their Certified Public Accountant, contacted the Taxpayer Advocate Service requesting assistance with their 2003 tax refund claim. *Id.* Ex. Q. The Taxpayer Advocate Service replied on July 7, 2009, informing plaintiffs that it had forwarded their inquiry regarding the status of their 2003 tax refund claim to the IRS and that plaintiffs would be contacted by August 7, 2009. *Id.* Ex. R.

On or around December 11, 2009, plaintiffs' accountant had a conversation with an IRS employee, Charity McDaniel. Compl. ¶ 10; Pls.' Resp. 4. Ms. McDaniel told plaintiffs' accountant that the IRS was waiting to process plaintiffs' claim because the IRS intended to appeal *Fisher*. Pls.' Resp. 4; *see also* Def.'s Reply to Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss Attach. 2, paras. 6–7 ("Def.'s Reply") (docket entry 21, Oct. 18, 2011). Ms. McDaniel told plaintiffs' accountant that, if the *Fisher* plaintiff ultimately prevailed, plaintiffs would receive a refund. Pls.' Resp. 4. Ms. McDaniel and plaintiffs' accountant did not discuss the August 31, 2007 notice of disallowance nor did they discuss any timeliness issues associated with plaintiffs' claim. *Id.*; *see also* Def.'s Reply Attach. 2, para. 7.

Plaintiffs memorialized this conversation in a letter dated December 11, 2009. Pls.' Resp. Ex. S. The letter explained that its purpose was "to confirm [the] recent conversation wherein [Ms. McDaniel] indicated that the reason for a lack of response with regard to [plaintiffs'] outstanding claim . . . was . . . the fact that the court case on which th[e] claim relie[d] . . . [was] being appealed by the [IRS]." *Id.* On March 2, 2010, the IRS wrote to plaintiffs regarding their December 2009 memorialization and advised plaintiffs that their letter was being referred to a different IRS office and that they could expect a response from the IRS within forty-five days. *Id.* Ex. T.

Until this point, all correspondence between the IRS and plaintiffs was through plaintiffs' certified public accountant. On April 19, 2010, Mr. Cadrecha personally wrote to the IRS asking for a resolution of his claim. *Id.* Exs. U, V, W. On August 22, 2010, Mr. Cadrecha sent a letter to the Taxpayer Advocate Service imploring it to "PLEASE help." *Id.* Ex. X.

Ms. McDaniel states that she had another telephone conversation in March 2011 with plaintiffs' accountant. Def.'s Reply Attach. 2, para. 9. Ms. McDaniel again notified plaintiffs' accountant that plaintiffs' claim was being held in suspense. *Id.* According to Ms. McDaniel, she remained unaware of the August 31, 2007 notice of disallowance and plaintiffs' accountant did not discuss it with her. *Id.* After this conversation, on or around April 26, 2011, the IRS sent plaintiffs a letter signed by Ms. McDaniel stating that plaintiffs' protective claim was "being held in suspense" pending the resolution of litigation concerning a similar demutualization issue in the District Court of Arizona. Pls.' Resp. Ex. Y; *see Dorrance v. United States*, No. 2:09-cv-01284-HRH (D. Ariz. filed June 15, 2009). The IRS explained that once the law on the basis of stock received as a result of an insurance company's demutualization became "well defined," it would act on plaintiffs' claim. Pls.' Resp. Ex. Y.

## II.   Discussion

"The Court of Federal Claims has jurisdiction to determine claims seeking refund of taxes paid, insofar as Congress has waived sovereign immunity in tax refund matters, pursuant to 28 U.S.C. § 1491(a)." *Walther v. United States*, 54 Fed. Cl. 74, 75 (2002). Both provisions on which defendant's motion to dismiss relies—I.R.C. § 6511 and I.R.C. § 6532—affect this court's jurisdiction to hear tax refund claims. *Murdock v. United States*, No. 11-326T, 2012 WL 401594, at *3–4 (Fed. Cl. Feb. 9, 2012) (discussing the jurisdictional limitations of § 6511(a) and explaining that a motion to dismiss based on this section is one to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1)); *R.S. Good Trucking, Inc. v. United States,* No. 00-267T, 2001 WL 1589422, at *3 (Fed. Cl. Oct. 22, 2001) ("[T]he Court's jurisdiction is limited by the two-year statute of limitations in I.R.C. § 6532(a).").

In this case, defendant filed a motion to dismiss plaintiffs' complaint pursuant to RCFC 12(b)(1) arguing that the Court does not have jurisdiction over plaintiffs' refund claim for the taxes they paid on the gain reported as a result of Principal Mutual's demutualization.[8] Mot. to Dismiss 1. Defendant essentially makes two arguments to support its motion. First, defendant argues that the Court lacks jurisdiction to hear plaintiffs' claim because the complaint was filed in this Court more than two years after the IRS mailed the notice of disallowance and plaintiffs' claim is therefore time barred under I.R.C. § 6532(a). Second, defendant argues that the

---

[8] Defendant based its motion to dismiss on both RCFC 12(b)(1) and 12(b)(6). RCFC 12(b)(6) permits a party to move the court to dismiss for failure to state a claim on which relief can be granted. When assessing a motion to dismiss based on RCFC 12(b)(1), the court must determine whether it has authority to address a plaintiff's legal and factual issues. *Brach v. United States*, 443 F. App'x 543, 547 (Fed. Cir. 2011). When reviewing a motion pursuant to RCFC 12(b)(6), however, "the court exercises its jurisdiction to look at the plaintiff's legal and factual assertions and concludes that the plaintiff has not made the sort of assertions that could lead to relief." *Id.* Here, although defendant notes that its motion to dismiss is based on RCFC 12(b)(6) in addition to RCFC 12(b)(1), its briefs focus on the court's jurisdiction to hear plaintiffs' claim. *See* Mot. to Dismiss 1; Def.'s Reply 5–12. Additionally, this court has explained that a motion to dismiss pursuant to I.R.C. § 6511(a)—the statute defendant relies upon with regard to its motion to dismiss plaintiffs' November 2008 filing as untimely, *see infra* Part II.B—is an RCFC 12(b)(1) motion to dismiss for lack of jurisdiction. *Murdock,* 2012 WL 401594, at *3–4.

6

document plaintiffs submitted to the IRS in November 2008 was filed more than three years after the date on which plaintiffs filed their 2003 tax return and that the claim is therefore time barred under I.R.C. § 6511(a). Therefore, defendant maintains plaintiffs' suit is untimely and the Court does not have jurisdiction.

When deciding a case based on a defendant's motion to dismiss for a lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the court is obligated to assume that all of a plaintiff's undisputed factual allegations are true and to draw all reasonable inferences in a plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

### A.    *Plaintiffs' Complaint Is Not Timely and Must be Dismissed*

According to the Internal Revenue Code ("IRC"), a plaintiff seeking a tax refund must meet certain requirements before filing a suit in the Court of Federal Claims. *See Jackson v. United States*, 100 Fed. Cl. 34, 42 (2011). First, the IRC mandates that, before a plaintiff files suit in this court, he or she must file a claim for refund with the IRS. I.R.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary . . . ."). Once a plaintiff has submitted a claim to the IRS, he or she must wait at least six months before he or she can file a suit in this court, unless the IRS renders its decision within that time period. I.R.C. § 6532(a)(1) ("No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time . . . ."). If the IRS issues a notice informing a plaintiff that his or her claim is disallowed, the plaintiff then has two years from the mailing date of the notice of disallowance within which to file a complaint in this court. *Id.* ("No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun . . . after the expiration of 2 years from the date of mailing . . . of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.").

Here, plaintiffs filed a protective claim with the IRS on March 22, 2007. The IRS mailed plaintiffs a notice of disallowance on August 31, 2007,[9] and plaintiffs filed their complaint in this court on March 9, 2011, approximately three-and-one-half years after the mailing date of the notice. Defendant maintains that these facts constitute grounds for dismissal pursuant to RCFC 12(b)(1).

---

[9] The Court assumes that the date appearing on the notice of disallowance was the date on which the notice was mailed. *See Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (noting, in the context of a Title VII action, that "[t]here is a presumption that a notice provided by a government agency was mailed on the date shown on the notice"); *Turner v. Shinseki*, No. 07-0643, 2011 WL 5526446, at *6 (D.D.C. Nov. 15, 2011).

1.     The Notice of Disallowance Was Not Withdrawn

In response to defendant's timeliness argument, plaintiffs contend that the statute of limitations set forth in I.R.C. § 6532(a)(1) never began running because the notice of disallowance was withdrawn. Pls.' Resp. 3–6. In support of this argument, plaintiffs cite the numerous letters the IRS sent to plaintiffs notifying them that their claim was under consideration. *Id.* at 3–4. Plaintiffs also rely upon the December 2009 conversation plaintiffs' accountant had with an IRS employee. *Id.* at 4. Plaintiffs also cite case law in support of their assertion that an IRS employee can orally withdraw a notice of disallowance and, thereby, prevent the notice from operating to start the running of the two-year period set forth in I.R.C. § 6532(a)(1). *Id.* at 4–5.

In each of the cases plaintiffs cite, however, regardless of the ultimate outcome, the taxpayer or his agent had a conversation with an IRS employee specifically addressing the relevant issue affecting the statute of limitations. *See Haber v. United States*, 831 F.2d 1051, 1052 (Fed. Cir. 1987), *amended by* 846 F.2d 1379 (Fed. Cir. 1988); *Howard Bank v. United States*, 759 F. Supp. 1073, 1078 (D. Vt. 1991), *aff'd*, 948 F.2d 1275 (2d Cir. 1991) (unpublished table decision); *Beardsley v. United States*, 126 F. Supp. 775, 776 (D. Conn. 1954). Here, plaintiffs make clear that neither plaintiffs' accountant nor the IRS employee with whom the accountant spoke in December 2009 mentioned the notice of disallowance or the two-year period set forth in I.R.C. § 6532(a)(1).[10] Because neither the notice nor the timeliness issue was mentioned, there could be no representation of withdrawal on which plaintiffs could rely. A series of form letters and a conversation with an IRS employee that did not address the notice of disallowance or the relevant statute of limitations are not enough to effectively withdraw the notice. *See First Ala. Bank v. United States*, 981 F.2d 1226, 1229–30 (11th Cir. 1993) (affirming the district court's determination that notices of disallowance were not withdrawn when an IRS agent orally informed the plaintiff's counsel that the statute of limitations was not running and when the plaintiff received form letters in response to its second set of claims that did not reference the earlier disallowance notices); *Cooper v. United States*, No. 3:97CV502-V, 2000 WL 1141598, at *6–8 (W.D.N.C. May 17, 2000) (finding that the improper denial of a protective refund claim did not start the running of the two-year statute of limitations within which to file suit because of three oral conversations the plaintiff's accountant had with IRS personnel indicating that a final, perfected claim was anticipated), *adopted in relevant part by* No. 3:97CV502-V, 2001 WL 1673620 (W.D.N.C. Oct. 30, 2001); *Howard Bank*, 759 F. Supp. at 1078 (finding for the taxpayer when it relied, not on "an inadvertent error" of the IRS, but "on the deliberate, commonsensical and laudable actions" of an IRS attorney who orally represented that disallowance would be reconsidered); *Haber v. United States*, 17 Cl. Ct. 496, 503–06 (1989) (finding no oral withdrawal when the taxpayer's accountant claimed to have had a conversation with the IRS concerning withdrawal, but there was no documented evidence of such conversation), *aff'd per curiam*, 904 F.2d 45 (Fed. Cir. 1990) (unpublished table decision).

---

[10] Moreover, although plaintiffs do not discuss it in their briefs, according to Ms. McDaniel, no mention was made of the notice of disallowance during her second conversation with plaintiffs' certified public accountant in March 2011. *See* Def.'s Reply Attach. 2, para. 9.

2.	The Statute of Limitations Is Not Tolled

Additionally, nothing that the IRS does by way of reconsideration or administrative appellate review after issuing a notice of disallowance has any effect on the statute of limitations. I.R.C. § 6532(a)(4) ("Any consideration, reconsideration, or action by the Secretary with respect to [a] claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun."); *see Estate of Orlando v. United States*, 94 Fed. Cl. 286, 290 (2010) ("The two-year period runs from the date the notice of disallowance is sent and, by statute, it is not tolled by any administrative appeals." (citing I.R.C. § 6532(a)(4))), *appeal dismissed*, No. 09-CV-702, 2011 WL 7425456 (Fed. Cir. Jan. 11, 2011). Therefore, that plaintiffs filed an appeal with the IRS disagreeing with its disallowance decision and that the IRS sent notices to plaintiffs informing them that their claim was being considered did not affect the two-year period plaintiffs had within which to file a complaint in this court after the notice of disallowance was mailed. *See* I.R.C. § 6532(a)(4).

Furthermore, that the IRS appears to have mistakenly disallowed plaintiffs' claim by referencing the wrong filing has no effect on the limitations period. Plaintiffs' March 2007 claim was filed with the IRS within the statute of limitations set forth in I.R.C. § 6511(a). In May 2007, after the statute of limitations had run on April 15, 2007, the IRS sent plaintiffs a letter explaining that it was not able to consider plaintiffs' claim as filed and requesting that plaintiffs supply additional information. Plaintiffs immediately replied. It is plaintiffs' May 2007 correspondence to which the notice of disallowance, dated August 31, 2007, refers. The notice explains that plaintiffs' claim is time barred and, therefore, disallowed.

It appears that, had the IRS not requested additional information from plaintiffs regarding their March 2007 filing, plaintiffs would not have sent the IRS their May 2007 response. Because plaintiffs' March 2007 claim was timely filed, it seems that the IRS may have inadvertently construed plaintiffs' May 2007 filing as their first and only claim, not as a supplement to plaintiffs' March 2007 claim. Because of this potential misinterpretation, and because the May 2007 claim was dated after the three-year statute of limitations in I.R.C. § 6511(a) had run, the IRS disallowed plaintiffs' claim as time barred.[11]

---

[11] The Court requested additional briefing on the effect of plaintiffs' May 2007 submission on the viability and timeliness of their March 2007 refund claim. Jan 13, 2012 Order (docket entry 24). In response to that request, defendant explained that plaintiffs' May 2007 letter to the IRS was a supplement to their March 2007 refund claim. *See* Def.'s Mem. in Resp. to Ct.'s Jan. 13, 2012 Order 3–7 (docket entry 25, Jan. 27, 2012). Defendant reasons that the May 2007 letter did not contain the requisite information to be considered a claim on its own and, therefore, it could not have been disallowed. *Id.* at 5–6. Additionally, defendant emphasizes that the May 2007 letter was responsive to the IRS's request for additional information to augment plaintiffs' March 2007 refund claim. *Id.* at 6–7. Accordingly, defendant maintains that the IRS's notice of disallowance "disallowed the Form 1040X, as supplemented by the May 23 submission." *Id.* at 7–8.

In their response to the Court's January 13, 2012 Order, plaintiffs do not disagree with defendant's conclusion. Plaintiffs note that the May 2007 filing was in response to the IRS's inquiry concerning the March 2007 refund claim. Pls.' Br. in Resp. to Ct.'s Order Filed Jan. 13,

Although the IRS may have misidentified the date of plaintiffs' refund claim in the notice of disallowance by construing plaintiffs' May 2007 submission as their original claim, the IRC makes no provision for tolling the statute of limitations for equitable reasons. *See* I.R.C. § 6532; *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1462 (Fed. Cir. 1998) (citing *United States v. Brockamp*, 519 U.S. 347 (1997)) (explaining that I.R.C. § 6532(a) "does not contain an implied 'equitable' exception" and that the statute "explicitly prohibits equitable considerations based on the actions of the IRS after a notice is mailed"). The Federal Circuit has explained that equitable concerns are not to be considered even if the actions of the IRS misled or confused the taxpayer. *RHI Holdings, Inc.*, 142 F.3d at 1460 ("Regardless of any confusion that the IRS's actions may have caused [the plaintiff], unless the statute of limitations, 26 U.S.C. § 6532, contains an implied equitable exception, considerations of equitable principles are not appropriate."). The only way the statute of limitations can be extended is through a written agreement signed by both the taxpayer and the Secretary of the Treasury. I.R.C. § 6532(a)(2) ("The 2-year period . . . shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary."). No such agreement exists here.

        3.      The Notice of Disallowance Explicitly Addressed the Two-Year Statute of Limitations

Finally, the notice of disallowance, even if it misidentified the date of plaintiffs' claim, *see supra* Part II.A.2, explicitly informed plaintiffs that, if they wished to file suit in the Court of Federal Claims, they had to do so within two years from the date of the notice. Pls.' Notice to Supplement Attach. at 4 ("The law permits you to [file suit] within 2 years from the date of this letter."). Therefore, even if plaintiffs disagreed with the IRS's disallowance, they were on notice that, to maintain an action in this court, they had to file suit within two years from the date the notice was mailed, i.e., by August 31, 2009.

In fact, plaintiffs filed their complaint in this court on March 9, 2011—well beyond two years after the notice of disallowance was mailed. Thus, plaintiffs' claim for a refund of taxes paid on their gain on the sale of stock received in the demutualization of Principal Mutual is untimely and must be **DISMISSED** for lack of jurisdiction pursuant to RCFC 12(b)(1).

    B.    *Plaintiffs' November 2008 Filing*

Defendant argues that the Court also lacks jurisdiction to consider plaintiffs' November 2008 filing that purported to perfect its March 2007 protective claim. Mot. to Dismiss 6–8; Def.'s Reply 10–12. Defendant makes two contentions in support of this argument. First, defendant contends that the November 2008 filing, taken as a separate claim, is untimely under I.R.C. § 6511. Mot. to Dismiss 6. Second, defendant argues that, even if the November 2008

---

2012, at 3 (docket entry 28, Feb. 3, 2012). Plaintiffs do not assert that the March 2007 claim is separate and distinct from their May 2007 submission, although they state that they "would like to claim" that such was the case and "would be happy to accept" a determination that the March 2007 claim remains viable. *Id.* at 4–5. Accordingly, it is undisputed that the May 2007 claim was a proper supplementation of plaintiffs' March 2007 refund claim and that the notice of disallowance disallowed plaintiffs' March 2007 claim as supplemented by their May 2007 filing.

filing can be said to perfect plaintiffs' protective claim filed March 22, 2007, that is irrelevant because the 2007 protective claim was disallowed. *Id.* at 6–8. The Court will address each of defendant's contentions in turn.

### 1. The November 2008 Filing Is Untimely

According to I.R.C. § 6511, a claim for a tax refund must "be filed by the taxpayer [with the IRS] within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." I.R.C. § 6511(a). Therefore, in order for this court to have jurisdiction over a taxpayer's claim, the taxpayer must show that he or she filed a claim with the IRS within the later of three years from the date of the return or two years from the date the tax was paid. I.R.C. § 6511(a); *see Mobil Corp. v. United States*, 67 Fed. Cl. 708, 715 (2005) ("[I]n order to vest this court with jurisdiction over the merits of a taxpayer's claim for refund, the taxpayer must show that it filed its claim for refund within the statute of limitations codified at section 6511(a).").

Here, plaintiffs' 2003 tax return was filed in April 2004. The filing that purports to perfect plaintiffs' protective claim was filed on November 3, 2008, more than three years after the return was filed. This is the later of the two deadlines contained in I.R.C. § 6511, the other being two years after April 15, 2004, the date on which the tax was paid. Stipulation of Facts 1; *see* I.R.C. § 6511(a). Therefore, if the November 2008 filing is construed as a separate claim, as defendant suggests, it was filed beyond the limitations period contained in I.R.C. § 6511 and cannot be considered by the Court.

### 2. The November 2008 Filing Cannot Perfect a Protective Claim that Has Been Disallowed

Defendant next argues that, even if plaintiffs' November 2008 filing can be construed as perfecting plaintiffs' protective claim, it is not properly before the Court because the IRS disallowed plaintiffs' protective claim.

Defendant correctly notes that a second claim for refund that amends or supplements a previous filing can be construed to "relate back" to the first claim and, therefore, can satisfy the statute of limitations even if it is otherwise filed outside the limitations period. Mot. to Dismiss 6 (citing *Stelco Holding Co. v. United States*, 42 Fed. Cl. 101, 114 (1998)). However, "a refund claim, informal or formal, cannot be amended or perfected after it has been denied or rejected, and after the period of limitations has expired." *Larson v. United States*, 89 Fed. Cl. 363, 387 (2009), *aff'd*, 376 F. App'x 26 (Fed. Cir. 2010); *accord Computervision Corp. v. United States*, 445 F.3d 1355, 1372 (Fed. Cir. 2006) ("[A]n amendment is ineffective if filed after the original claim has either been allowed or disallowed by the IRS."). Here, the statute of limitations had run before plaintiffs submitted their November 2008 filing to perfect their original protective claim, and the IRS had disallowed the March 2007 protective claim that the November 2008 filing was intended to perfect. Accordingly, plaintiffs' November 2008 filing could not perfect their protective claim.

Plaintiffs respond to defendant's contentions by reasserting their position that the notice of disallowance was withdrawn. This argument is unpersuasive for the reasons discussed above.

*See supra* Part II.A.1. Plaintiffs' November 2008 filing cannot be considered by the Court because it was untimely filed as a separate claim. Alternatively, the filing which it sought to perfect had been disallowed. As a result, plaintiffs' claim based on the November 2008 filing must also be **DISMISSED** for lack of jurisdiction pursuant to RCFC 12(b)(1).[12]

## CONCLUSION

In view of the foregoing, defendant's motion to dismiss is **GRANTED** and plaintiffs' complaint is **DISMISSED** for lack of jurisdiction pursuant to RCFC 12(b)(1). The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

                                         s/ George W. Miller
                                         GEORGE W. MILLER
                                            Judge

---

[12] The Court recognizes that some may regard the Court's decision as harsh. As a result, to some degree, of the IRS's actions, plaintiffs may have come to believe that the IRS was continuing to analyze their refund claim and that the IRS was in the process of reconsidering the notice of disallowance. Nevertheless, the Court holds that plaintiffs' refund claim in this court is time barred due, at least in part, to the possible confusion created by (1) the IRS's conversations with plaintiffs' accountant, (2) the form letters the IRS sent to plaintiffs in connection with its analysis of plaintiffs' claim, and (3) the relative informality the IRS's dealings with plaintiffs. However, as Justice Holmes famously stated in the context of a tax refund case in the early twentieth century: "Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with." *Rock Island A. & L. R. Co. v. United States*, 254 U.S. 141, 143 (1920). As other courts have recognized, this Court is obligated to apply the laws of Congress as written and is bound by applicable precedent. *See, e.g.*, *Brockamp*, 519 U.S. at 352–53; *Murdock*, 2012 WL 401594, at *6; *Orlando,* 94 Fed. Cl. at 293; *Musungayi v. United States*, 86 Fed. Cl. 121, 125 (2009).